UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES MICHAEL O'GARA, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-01237-TWP-MPB |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| GUERINO JOHN CENTO, | ) | |
| | ) | |
| Interested Party. | ) | |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL AGAINST EQUIFAX**
**(Docket No. 74)**

This matter is before the Court on Plaintiff's Motion to Compel Against Equifax (Docket No. 74; 75). The motion is fully briefed. (Docket No. 76; Docket No. 77). For the reasons that follow the Court **GRANTS in part and DENIES in part** Plaintiff's Motion to Compel.

Mr. O'Gara brings this lawsuit alleging purported violations of the Fair Credit Reporting Act ("FCRA") against Equifax. O'Gara avers that when he was eighteen years old and living at home with his father, he received documents that showed that he was liable for unpaid property taxes. (Docket No. 1 at ¶ 34; Docket No. 75 at ECF p. 4). Eventually Plaintiff learned that the property taxes in question were actually taxes levied against Plaintiff's father, Charles Michael O'Gara II. (Docket No. 1 at ECF p. 7). From 2007 to 2015, Plaintiff was denied credit on several occasions. (Docket No. 1 at ECF pp. 7-8). In 2016, after being contacted by O'Gara (for the first time), Equifax removed the tax lien on his file. (Docket No. 75-2 at ECF p. 3). This lawsuit followed.

O'Gara asserts his denial was "entirely caused by Equifax's matching procedures." (Docket No. 75 at ECF p. 4). O'Gara details the "matching procedures" match public record information, like tax liens, without regard to matching unique personal identifiers (i.e., social security numbers or dates of birth), but instead relies on matching names in the public record to identify which file the public record should be associated with. *Id.*

Plaintiff alleges Equifax violated two provisions of the FCRA: §1681e(b) (Docket No. 1 at ¶ 78), which requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e(b). Second, Plaintiff alleges that Equifax violated § 1681g (Docket No. 1 at ECF p. 13), which requires credit reporting agencies; upon receipt of a request from a consumer, to "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). Plaintiff alleges damages under § 1681n (willful) and § 1681o (negligent) violations—specifically, Plaintiff alleges statutory damages, punitive damages, and costs and attorney fees. (Docket No. 1 at ECF p. 13).

Now, O'Gara moves this Court to compel Equifax to provide him with full answers to several interrogatories and requests for production, which O'Gara asserts were answered insufficiently. O'Gara argues, generally, this discovery is related to Equifax's knowledge and to its actions in dealing with a mixed file problem. O'Gara further requests reasonable attorney fees and costs associated with this motion and prior discovery (including the disqualification phase discovery). Equifax provides two reasons O'Gara's motion should be denied. The information Plaintiff seeks is not relevant to any party's claim or defense and the discovery is not proportional to the needs of the case. (Docket No. 76 at ECF p. 3).

The parties met on July 31, 2017, to discuss the discovery in question. (Docket No. 75 at ECF p. 31). A second and third meeting occurred on September 27, 2017 and October 4, 2017. (Docket No. 75 at ECF p. 32). Equifax supplemented its responses, in part, on October 4, 9, and 17, 2017, but otherwise stood on its prior objections. *Id.*

In the event that parties cannot informally resolve a discovery dispute, Rule 37 provides a vehicle for the aggrieved party to request an order from the Court compelling discovery. *See Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). District courts have broad discretion in matters relating to discovery. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001)). Federal Rule of Civil Procedure 26(b)(1) sets the standard for the scope of general discovery, providing that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Although evidence need not necessarily be admissible to be discoverable, discovery may be limited when it "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or where "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *United States v. Handrup*, No. 13 C 7733, 2016 WL 8738943, at *1 (N.D. Ill. July 11, 2016) (citing Fed. R. Civ. P. 26(b)(2)(C)).

A party moving to compel production carries the initial burden of establishing that the requested documents are relevant. *West v. Miller*, Case No. 05CV4977, 2006 WL 2349988, at *2

(N.D. Ill. Aug. 11, 2006) (citing *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993)). If that burden is met, the burden then shifts to the non-movant to show the impropriety of the request. *Id.* at *7.

O'Gara has categorized the discovery requests he is seeking responses to into five categories: (1) Equifax's policies, procedures, data and analysis on collecting and compiling credit information, mixed files, reinvestigation of consumer disputes and personnel training (Equifax Responses and Objections to Plaintiff's First Set of Interrogatories, Nos. 5, 7, 8, 9, 15 and Equifax Responses and Objection to Plaintiff's First Requests for Production, Nos. 19, 20, 21, 22, 23, 26, 30) (Docket No. 75-2; Docket No. 75-3); (2) information on Plaintiff (Equifax Responses and Objections to Plaintiff's First Set of Interrogatories, Nos. 3 and 4) (Docket No. 75-2); (3) Equifax's knowledge and scope of mixed file problem, including prior suits and consumer disputes (Equifax Responses and Objections to Plaintiff's First Set of Interrogatories, Nos. 11, 12, 13); (4) mixed file related studies and accuracy related information (Equifax Responses and Objections to Plaintiff's First Requests for Production, Nos. 19, 20, 21, 22, 23, 26, 30)[1]; and (5) information related to the New York Attorney General investigation, settlement and compliance with that settlement (Equifax Responses and Objections to Plaintiff's Second Set of Interrogatories, Nos. 1-4 and Equifax Responses and Objections to Plaintiff's Second Requests for Production, Nos. 1-3) (Docket No. 75-3; Docket No. 75-4).

The Court will now address each disputed written discovery group in turn.

---

[1] Each of the Requests for Production compelled in Topic Number 4 are also compelled in Topic Number 1. The Court will only address these requests one time.

I. **Equifax's policies and data regarding collecting and compiling credit information, mixed files, reinvestigation of consumer disputes and personnel training** (O'Gara First Set of Interrogatories, Nos. 5, 7, 8, 9, 15 and O'Gara First Requests for Production, Nos. 19, 20, 21, 22, 23, 26, 30) ([Docket No. 75-2](); [Docket No. 75-3]())

The parties' first dispute regards Plaintiff's use of the term "Mixed File." In Interrogatory No. 3, O'Gara asks Equifax "Did Plaintiff have a Mixed File as that term is defined herein?" ([Docket No. 75-2 at ECF p. 3]()). However, the term was never defined within the interrogatory. Equifax objected "on the basis that Plaintiff's Interrogatories do not define 'Mixed File' and, therefore, the Interrogatory is vague and ambiguous. ([Docket No. 75-2 at ECF p. 4]()). Equifax goes on to answer the Interrogatory. Subsequent to Interrogatory No. 3, every interrogatory that references "mixed file" is objected to based upon the lack of a term definition and, without waiving that objection, later answered the interrogatory. The Court also notes that Equifax provided its mixed file and dispute manuals to Plaintiff in response to Plaintiff's Interrogatory No. 6 ([Docket No. 75-2 at ECF pp. 5-6]()). O'Gara responds that the term "mixed filed" does not need defined as it is at the heart of what Equifax does. The Court finds Defendant's objection was a result of O'Gara's "defined herein" notation. Therefore, the Court finds that the definition of a "mixed file" is: where credit data is not matched to the correct consumer. ([Docket No. 77 at ECF p. 2]()). In the same vein, the Court finds that the definition of a "confirmed mixed file" is: a mixed file in which a consumer has disputed "information contained in their consumer reports when a CRA confirms that a consumer's credit file information was mixed with that of another consumer." ([Docket No. 77 at ECF p. 3]()). **If these definitions require Equifax to supplement any interrogatories within this topic or any other topic addressed in this Order, Equifax is ORDERED to supplement within fourteen (14) days of this entry.**

With regards to O'Gara's First Set of Interrogatories No. 5, 7, 8, 9, and 15, the Court finds that these Interrogatories have been sufficiently answered. The Court provides

Interrogatory No. 5 and its Answer, below, and notes that the other Interrogatories are similarly answered.

> **Interrogatory No 5**: Please provide a detailed description (including any title(s) of any and all manuals, guides, algorithms, rules, or other document(s) containing such description) of how you utilize, rank, or weigh different pieces of personal identifying information, such as first name, middle initial or name, last name, current address, former address, date or year of birth, and Social Security number, when determining what items to include in a given consumer report?

> **Response to Interrogatory No. 5**: Equifax states that generally, consumer credit files are created using identifying information provided by a data furnisher (e.g., credit grantors such as credit card, mortgage, automobile, retail, and insurance companies). Before data is uploaded into Equifax's consumer database it is subjected to a variety of tests designed to determine the data's integrity and overall quality, and to standardize updates to the format used by Equifax. This process is referred to as "data quality assurance." After data passes quality assurance, it is uploaded into Equifax's consumer database, which processes the data using a sophisticated and proprietary algorithm designed to match new information to existing consumer credit files, or, if no file is available, to create a new file for the consumer. This process is confidential, proprietary and trade secret and, therefore, this response is submitted pursuant to the protective order in this case. This process uses personal identifying information which generally includes a combination of name, address, social security number, and date of birth. Equifax uses these elements because they are elements generally available to data furnishers, that either do not change or change infrequently, that are used in society to distinguish consumers, and that include a combination of publicly available and privately held information.

(Docket No. 75-2 at ECF p. 5).

> **Supplemental Response to Interrogatory No. 5**: Subject to its previously served Objections and response, Equifax identifies its mixed file manuals, previously produced as EIS-OGARA-002806-002895.

(Docket No. 75-16 at ECF p. 2). The Court does not find the answer to be insufficient, especially in light of the fact that Equifax also provided its mixed file and dispute manuals. The

Court notes that O'Gara has made no specific arguments as to the insufficiencies of these interrogatories and upon the Court's own review finds them sufficiently answered. Therefore, with the exception of the aforementioned term definitions, Plaintiff's Motion to Compel as to Plaintiff's First Interrogatories Nos. 5, 7, 8, 9 and 15 is hereby **DENIED.**

Plaintiff's First Request for Production of Documents Nos. 19, 20, 21, 22, 23, 26, and 30 also fall within this first topic.

> **Request for Production No. 19**: Any and all studies, reports and/or audits done on the accuracy of information in your consumer reports or consumer reports generally.
>
> **Response to Request for Production No. 19**: Equifax objects to this Request as not relevant to issues in this case and not proportional to the needs of the case. Equifax further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.

(Docket No. 75-3 at ECF p. 8). The Court finds this request is entirely too broad. It provides no temporal limitations and it goes well beyond matching inaccuracies in public record cases, which is the type of inaccuracy alleged here. Plaintiff's request as to Request for Production No. 19 is **DENIED.**

> **Request for Production No. 20**: Any and all studies, reports and/or audits done on the rate or percentage of mixed files occurring in your consumer reports or consumer reports generally.
>
> **Response to Request for Production No. 20**: Equifax objects to this Request as not relevant to issues in this case and not proportional to the needs of the case. Equifax further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.

(Docket No. 75-3 at ECF p. 8). While this request is narrower in its subject scope, it provides no temporal limitations and it would be unduly burdensome for Equifax to provide any

and all responsive materials from all time. Plaintiff's request as to Request for Production No. 20 is **DENIED.**

Requests for Production Nos. 21, 22, 23 all involve production of documents for conducting reinvestigations under 15 U.S.C. §1681i. Plaintiff does not assert a claim under §1681i and provides no argument in this briefing as to the relevancy of discovery related to §1681i to the claims he did set forth, despite Defendants arguing otherwise. The Court finds Plaintiff has not met his initial burden of establishing the relevancy of these Requests for Production and, therefore, Plaintiff's requests as to Requests for Production Nos. 21, 22, and 23 is **DENIED**.

> **Request for Production No. 26**: Documents sufficient to identify:
>
> A. All computer systems in which you store consumer information;
> B. All computer systems in which you store email;
> C. All computer systems in which you store correspondence with companies or other entities that furnish you with bankruptcy information;
> D. All computer systems in which you store documents related to your policies and procedures for the collection, maintenance, and reporting of bankruptcy information.
>
> **Response to Request for Production No. 26**: Equifax objects to this Request as overbroad, not relevant to issues in this case, and not proportional to the needs of the case. Equifax further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information.

(Docket No. 75-3 at ECF p. 10).

> **Supplemental Response to Request for Production No. 26**: Subject to its previously served Objections, Equifax identifies its previously produced mixed file manuals and mail indicating manual, EIS-OGARA-002806-003124.

(Docket No. 75-17 at ECF p. 2). O'Gara argues that, citing Fed. R. Civ. P. Rule 26, this is a basic request and one which the trial rules and local rules require Equifax to answer. In fact,

O'Gara argues this information should have been provided in Equifax's initial disclosures. The Court does not find language in Fed. R. Civ. P. 26(a)(1), which would require Equifax to have provided this information within its initial disclosures. Rule 26(a)(1)(A)(ii) does require either a copy or description by category of several items, including electronically stored information, which may be used to support a parties claims or defenses, unless solely for the purpose of impeachment. This, of course, may require the disclosure of some ESI, but not to answer general questions regarding a party's ESI storage. The Comments do provide that "[f]raming intelligent request for electronically stored information . . . may require detailed information about another party's information systems and other information resources." Fed. R. Civ. P. 26 cmt. Additionally, the Comments make clear that the 2015 rule amendments do not negate the 2000 comment that offered examples of relevant discovery, which included: "information about organizational arrangements or filing systems."

The Court notes that the request for production only asks for documents sufficient to identify these computer systems and does not ask for detailed documentation as to the operation of those systems. This Court does not find the request unduly burdensome and Equifax provides no specific argument to the contrary. However, subparagraphs C and D of the request ask for specific systems related to bankruptcy information and the reporting of the same. This case involves a tax lien, which resulted in a mix file. Therefore, the Court does not find computer systems related to bankruptcy relevant to O'Gara's claims and defenses. **The Court GRANTS Plaintiff's request as to Request for Production No. 26, subparagraphs (A) and (B). Equifax is ORDERED to supplement its response, if necessary in light of supplemental answer provided above, within fourteen (14) days of this entry.**

**Request for Production No. 30**: Any and all internal daily, weekly, monthly, quarterly, and/or annual records or reports prepared, maintained, or otherwise circulated within Defendant relating to the number of mixed files you have "confirmed" (according to your own criteria for identifying and confirming mixed files) in each of the previous five years.

**Response to Request for Production No. 30**: Equifax objects to this Request as overbroad, not relevant to issues in this case, and not proportional to the needs of the case. Equifax further objects to this Request to the extent it seeks confidential, proprietary, and/or trade secret information. Equifax further objects to this request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

([Docket No. 75-3 at ECF p. 11](#)). Plaintiff argues the information is relevant to show that Equifax knows it has systemic problems with mixed files and nonetheless failed to implement practices that would resolve these systemic problems. The Court is persuaded that the evidence Plaintiff seeks is relevant to Plaintiff's claim. As part of his claim, O'Gara must prove the inaccuracy on the credit report was due to the defendant's failure to follow reasonable procedures to assure maximum possible accuracy. *Mirocha v. TRW, Inc.*, 805 F. Supp. 663, 668 (S.D. Ind. Oct. 2, 1992) (citing 15 U.S.C. §1681e(b)). Plaintiff explains that it seeks this discovery to show Equifax was ware of widespread problems with mixing files—thus, this interrogatory is certainly relevant to Plaintiff's claims. The Court is not persuaded that Plaintiff's request for the number of mixed records and customer disputes processed as a mixed file is overly burdensome and Equifax has made no argument other than generalized objections as to the burden of the request. *See Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990) ("[An objecting party] is required to specifically detail the reasons why each interrogatory is objectionable."). **The Court GRANTS Plaintiff's request as to Request for Production No.**

**30. Equifax is ORDERED to supplement its response within fourteen (14) days of this entry.**

II.    **Equifax's information on O'Gara** (O'Gara First Set of Interrogatories, Nos. 3, 4) ([Docket No. 75-2](#))

**Interrogatory No. 3**: Did Plaintiff have a Mixed File as that term is defined herein?

(a) If you answer negatively, please provide a detailed description (including any title(s) of any and all manuals, guides, or other document(s) containing such description) of how you came to that answer or conclusion

(b) If you answer affirmatively,

(i)    Please identify the first date on which you determined Plaintiff had a Mixed File, and who made that determination;

(ii)   Please identify all information you need or on which you relied to determine that Plaintiff had a Mixed File;

(iii)  Please identify the person (or persons), by full name and File Identification Number (as applicable) with whom you have determined Plaintiff's credit file was mixed;

(iv)   Please describe how or why Plaintiff's credit file was mixed with the person (or persons) identified in Subsection (c) above;

(v)    Please identify the date on which Plaintiff's Mixed File was corrected, *i.e.*, un-mixed, if at all, and who handled that correction, *i.e.*, the un-mixing;

(vi)   Please identify all information which you needed and/or on which you relied to correct, *i.e.*, un-mix, Plaintiff's credit file.

**Response to Interrogatory No. 3**: Equifax objects to this Interrogatory on the basis that Plaintiff's Interrogatories do not define "Mixed File" and, therefore, the Interrogatory is vague and ambiguous. Subject to and without waiving its General and Specific Objections, Equifax states that it appears that tax lien No. 569969, bearing Plaintiff's first, last name, and address (the "Lien"), reported on Plaintiff's file. Plaintiff alleges the Lien belongs to his father, who shared the same first name, last name, and address as Plaintiff during the relevant time period. Equifax's records show the Lien first appeared on Plaintiff's file in June, 2007. The Lien was removed from Plaintiff's file with his first and only dispute of it on March 4, 2016.

(Docket No. 75-2 at ECF pp. 3-4). The relevancy of this request is obvious—it involves the very subject matter of the suit. Equifax's response partially answers the interrogatory, but several subsections remain unanswered. For instance, there was no attempt to identify information relied on to determine if Plaintiff had a mixed file (ii), to provide the full name and file identification number of the individual with whom Plaintiff's credit file was mixed (iii), to describe how or why the file was mixed (iv), to identify who handled the un-mixing (v), or to identify the information relied upon to un-mix the file (vi). **The Court GRANTS Plaintiff's request as to Interrogatory No. 3. Equifax is ORDERED to supplement its response within fourteen (14) days of this entry.**

> **Interrogatory No. 4**: Do you delineate or designate different types or kinds of Mixed File for any reason, including but not limited to, record keeping, reinvestigations, correction, and/or prevention of further or future mixing? If so, please provide a detailed description (including any title(s) of any and all manuals, guides or other document(s) containing such description) of the different types or kinds of Mixed Files that are possible (including a description of how you determine which category a particular mixed file is), and identify which type or kind of Mixed File Plaintiff has (or had).

> **Response to Interrogatory No. 4**: Equifax objects to this Interrogatory on the basis that Plaintiff's Interrogatories do not define "Mixed File" and, therefore, the Interrogatory is vague and ambiguous. Equifax further objects to the extent the Interrogatory seeks information that is neither relevant to any issue in this case nor proportional to the needs of the case. Equifax further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection. Equifax further objects to this Interrogatory on the basis that the term "Mixed File" is not defined. Subject to and without waiving its General and Specific Objections, see response to Interrogatory No. 3.

(Docket No. 75-2 at ECF p. 4).

> **Supplemental Response to Interrogatory No. 4**: Subsequent to its previously served Objections and response, Equifax identifies its

mixed file manuals, previously produced as EIS-OGARA-002806-002895.

(Docket No. 75-16 at ECF p. 1).

O'Gara makes no argument as to the relevancy of whether or not Equifax delineates its Mixed File cases into separate categories, nor can the Court see how this delineation is relevant as to O'Gara's claims. The Court also notes that Equifax provided its mixed file and dispute manuals to Plaintiff in response to Plaintiff's Interrogatory No. 6, which is largely responsive to this interrogatory. (Docket No. 75-2 at ECF pp. 5-6). The Court **DENIES** Plaintiff's request as to Interrogatory No. 4.

**III.** **Equifax's knowledge and scope of mixed file problem, including prior suits and consumer disputes** (O'Gara First Set of Interrogatories, Nos. 11, 12, 13) (Docket No. 75-2)

Plaintiff contends that the credit reporting errors in his case were in negligent or willful violation of FCRA sections 1681e(b) and 1681g. O'Gara asserts, in proving negligence or willfulness, he is entitled to know what Equifax knew about mixed files and when it knew it. For example, O'Gara argues, if Equifax had never before encountered a mixed file, the standard of care for reasonable procedures to avoid such a mix in the first place or for correcting such a mix upon a consumer dispute would be different than if Equifax had ample knowledge of this type of error, but failed to do so. (Docket No. 75 at ECF p. 21).

> **Interrogatory No. 11**: Please identify the number of mixed files you have confirmed (according to its own criteria for identifying and confirming Mixed Files) in each of the previous (5) years.
>
> **Response to Interrogatory No. 11**: Equifax objects to this Interrogatory on the basis that Plaintiff's Interrogatories do not define "Mixed File" and, therefore, the Interrogatory is vague and ambiguous. Equifax further objects to the undefined term "confirmed" as vague and ambiguous. Equifax further objects to this Interrogatory on the basis that it [sic] overbroad, unduly burdensome, and seeks information that is neither relevant to any

issue in this case nor proportional to the needs of the case. Equifax further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, the right of privacy of any person or entity, or any other applicable privilege or protection. Equifax further objects to this Interrogatory to the extent it seeks confidential, trade secret, and/or proprietary information.

(Docket No. 75-2 at ECF p. 8).

> **Interrogatory No. 12**: Please identify by name, case number, and court, all FCRA lawsuits involving a Mixed File claim that you have defended in each of the previous (5) years.

> **Response to Interrogatory No. 12**: Plaintiff's Interrogatories do not define "Mixed File" and, therefore, Equifax objects to this Interrogatory on the basis that it is vague and ambiguous. Equifax further objects to this Interrogatory on the basis that it [sic] overbroad, unduly burdensome, and seeks information that is neither relevant to any issue in this case nor proportional to the needs of the case. Equifax further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection. Equifax further objects to this Interrogatory as the information sought is equally available to Plaintiff.

(Docket No. 75-2 at ECF p. 9).

> **Interrogatory No. 13**: Please identify the number of consumer disputes that you investigated as mixed file matters (according to its own criteria for identifying mixed files) in each of the previous five years.

> **Response to Interrogatory No. 13**: Equifax objects to this interrogatory on the basis that it overbroad, unduly burdensome, and seeks information that is neither relevant to any issue in this case nor proportional to the needs of the case. Equifax further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

(Docket No. 75-2 at ECF p. 9). Equifax argues that the number of Mixed Files Equifax

has confirmed, the number of lawsuits filed, and the number of consumer disputes for the past

five years have nothing to do with whether Equifax violated § 1681e(b) or § 1681g by including a tax lien on Plaintiff's file. (Docket No. 76 at ECF p. 12).

The relevancy analysis regarding Request for Production No. 30, above is applicable here. The Comments to Fed. R. Civ. P. Rule 26 are also clear that relevancy is to a parties' claims or defenses is broader than being relevant to the subject matter of the suit. For example, the 2000 Note provides that "other incidents of the same type, or involving the same product" would be relevant. With regard to the other lawsuits, regardless of whether complaints filed by other consumers would be admissible at trial, similar complaints might, at the very least, lead to the discovery of admissible evidence related to the negligent or willful issue. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). Other courts have granted similar discovery requests. *Montelongo v. Trans Union, LLC*, 308 F.R.D. 132 (E.D. Penn. June 22, 2015) (Consumer entitled to discovery request for corporate witness from agency who could testify regarding approximate number of lawsuits instituted against agency based on alleged violations of FCRA involving mixed files, as well as approximate number of mixed files and consumer disputes processed as mixed file, during five year time period); *Valenzuela v. Equifax Information Services, LLC*, 2015 WL 1097315, at *2 (D. Ariz., Mar. 5, 2015) ("Equifax shall produce copies of any and all complaints . . . against it in the last 5 years raising claims under the [FCRA], [but is not required to sort those complaints by alleged violation type]).

Relevancy is established, but Equifax has objected to each of these interrogatories as unduly burdensome—thus the court must determine the proportionality of the request.

Proportionality is determined by considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Here, the parties' briefs only address jury verdicts in other FCRA cases, which partially addresses the issues at stake and the amount in controversy. Plaintiff cites several cases where the verdicts were well over a million dollars, with a majority of the amount awarded as punitive damages. (Docket No. 75 at ECF pp. 7-8). Defendant disputes the applicability of these cases , arguing that they have radically different facts as the plaintiffs submitted multiple disputes, spanning a long period of time and, in one case awarded a "$60 million" verdict involved a class of 8,185 persons, which amounted to $7,337.30 payout per plaintiff. (Docket No. 76 at ECF pp. 16-17). Equifax is correct that these stark differences make these cases inapplicable. Regardless, this exercise provides little assistance to the Court's proportionality assessment because the cited cases do not discuss discovery's relevancy, the amount in controversy is but one factor of the case, and neither party makes any effort to provide the Court the amount in controversy at stake in this case—just that Plaintiff finds it akin to the cited cases but Defendant does not.

It was Equifax's burden to establish the disproportionality of these requests. With the exception of the amount in controversy discussion, Equifax merely recites the factors several times in its brief without addressing any factor with specificity; therefore, the Court finds that Equifax has not met its burden to establish that these requests are unduly burdensome. **The Court GRANTS Plaintiff's request as to Interrogatories Nos. 11, 12, 13. Equifax is ORDERED to supplement its response within fourteen (14) days of this entry.**

IV. **Equifax's information related to the NYAG investigation, settlement and compliance with that settlement** (O'Gara Second Set of Interrogatories, Nos. 1-4 and Second Set of Requests for Production, Nos. 1-3) (Docket No. 75-3; Docket No. 75-4)

One ubiquitous argument that O'Gara seems to make for all the disputed discovery involves a 2012 New York Attorney General ("NYAG") three-year investigation into Credit

Reporting Agencies' mixed file errors and how Equifax's matching procedures were impacted by the resulting settlement. (Docket No. 75 at ECF p. 19). Pursuant to the settlement agreement, the consumer reporting agencies, including Equifax, agreed to make various changes to their practices. This three-year investigation culminated in a March 8, 2015, settlement agreement between the NYAG and the consumer reporting agencies affected numerous changes that were to take affect over the next three years and ninety days. (Docket No. 75-9 at ECF p. 9). Of significance, these changes included that the CRA's shall develop and share best practices for sharing Confirmed Mixed File information. On March 13, 2017, the consumer reporting agencies issued a public statement that indicated, among other things, Equifax would now require a match of either a SSN and/or date of birth to match a public record, such as a tax lien, to a credit file. These "enhanced standards" were to be implemented on July 1, 2017 with all data corrected by October 2017.

Plaintiff asserts that the NYAG investigation, agreement, and resulting changes are relevant to his case as the matching algorithms investigated are the exact same algorithms employed by Equifax which caused Plaintiff's credit file to be mixed. O'Gara asserts that because his mortgage denial[2] occurred between the date Equifax agreed to change the matching standards (March 8, 2015) and the dates those changes were to be implemented (July to October 2017), everything that happened before, during, and after the NYAG investigation and the NYAG Settlement Agreement are relevant to Plaintiff's claims, especially to the question of willfulness and Equifax's defenses in this case. (Docket No. 75 at ECF pp. 21-22).

---

[2] The exact date is not plead in the complaint. Equifax's response to Plaintiff's First Set Interrogatory No. 3 indicates the lien was removed from Plaintiff's file with his first and only dispute on March 4, 2016. (Docket No. 75-2 at ECF p. 4).

Defendant counters that the March 13, 2017, press release detailing changes to take place later that year is irrelevant given that O'Gara contacted Equifax about one tax lien in February 2016, which was immediately removed from his file. ([Docket No. 76 at ECF p. 20](#)). Equifax argues that O'Gara overemphasizes the NYAG settlement's applicability to his case, given that the settlement itself acknowledged only a small number of mixed files occur through the CRA's matching information process—which here was the "entire cause" of Plaintiff's damages.

The respective interrogatories and requests for production are:

> **Interrogatory No. 1**: Please describe in detail how the enhanced public record data standards referenced in the attached March 13, 2017, press release form [sic] the CDIA (the "Press Release") differ from the standards that were in place during the period of January 1, 2015 to present.

> **Response to Interrogatory No. 1**: Equifax objects to this Interrogatory on the basis that it seeks information that is neither relevant to any issue in this case nor proportional to the needs of the case. Equifax further objects to the extent it seeks confidential, trade secret, and/or proprietary information.

> **Supplemental Response to Interrogatory No. 1**: Subject to its previously served Objections, Equifax states that it no longer reports judgments or tax liens that do not have at least three of the following personal identifiers: name, address, Social Security number, and date of birth. Previously, only two items of personal identification were required.

([Docket No. 75-4 at ECF p. 2](#); [Docket No. 75-18 at ECF p. 2](#)).

> **Interrogatory No. 2**: Under the enhanced public record data standards referenced in the Press Release, would the tax liens and tax warrants referenced in Plaintiff's February 12, 2016 letter have been included in his credit reports, credit file, and/or consumer disclosures issued prior to that date?

> **Response to Interrogatory No. 2**: Equifax objects to this Interrogatory on the basis that it seeks information that is neither relevant to any issue in this case nor proportional to the needs of the case. Equifax further objects to the extent it seeks confidential, trade secret, and/or proprietary information.

**Supplemental Response to Interrogatory No. 2**: Subject to its previously served Objections, Equifax states, no.

(Docket No. 75-4 at ECF p. 2; Docket No. 75-18 at ECF p. 2).

**Interrogatory No. 3**: Describe in detail the reason that the enhanced public record data standards referenced in the Press Release we [sic] developed.

**Response to Interrogatory No. 3**: Equifax objects to this Interrogatory on the basis that it seeks information that is neither relevant to any issue in this case nor proportional to the needs of the case. Equifax further objects to the extent it seeks confidential, trade secret, and/or proprietary information. Equifax further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

**Supplemental Response to Interrogatory No. 3**: Equifax objects to the extent this Interrogatory seeks evidence of inadmissible subsequent remedial measures.

(Docket No. 75-4 at ECF p. 3; Docket No. 75-18 at ECF p. 2).

**Interrogatory No. 4**: What does Equifax hope to or expect to achieve by implementing the enhanced public record data standards referenced in the Press Release?

**Response to Interrogatory No. 3**: Equifax objects to this Interrogatory on the basis that it seeks information that is neither relevant to any issue in this case nor proportional to the needs of the case. Equifax further objects to the extent it seeks confidential, trade secret, and/or proprietary information. Equifax further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

**Supplemental Objection to Interrogatory No. 4**: Equifax objects to this interrogatory as vague and ambiguous.

(Docket No. 75-4 at ECF p. 3).

**Request for Production No. 1**: All communications, including without limitation emails, letters, and/or memoranda, between any employee, representative, or agent of Equifax and any employee,

representative, or agent of the Consumer Data Industry Association ("CDIA") regarding the development and implementation of the enhanced public record data standards referenced in the attached March 13, 2017, press release form [sic] the CDIA (the "Press Release").

**Response to Request for Production No. 1**: Equifax objects to this Request as unduly burdensome, not relevant to any issue in this case, and not proportional to the needs of the case. Equifax further objects to this Request to the extent it seeks production of confidential, trade secret, and/or proprietary information. Equifax further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

**Supplemental Objections and Response to Request For Production No. 1**: Equifax objects to the extent this request seeks evidence of inadmissible subsequent remedial measures. Subject to these and its previously served Objections, see EIS-OGARA-003125-003132.

(Docket No. 75-5 at ECF p. 2; Docket No. 75-19 at ECF p. 2).

**Request for Production No. 2**: All internal Equifax documents and communications, including without limitation emails, letters, and/or memoranda, regarding the development and implementation of the enhanced public record data standards referenced in the Press Release.

**Response to Request for Production No. 2**: Equifax objects to this Request as unduly burdensome, not relevant to any issue in this case, and not proportional to the needs of the case. Equifax further objects to this Request to the extent it seeks production of confidential, trade secret, and/or proprietary information. Equifax further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

**Supplemental Objections to Request for Production No. 2**: Equifax objects to the extent this Request seeks evidence of inadmissible subsequent remedial measures.

(Docket No. 75-5 at ECF pp. 2-3; Docket No. 75-19 at ECF p. 2).

**Request for Production No. 3**: All communications, including without limitation emails, letters, and/or memoranda, between any

> employee, representative, or agent of Equifax and any employee, representative, or agent of Equifax's customers regarding the development and implementation of the enhanced public record data standards referenced in the Press Release.
>
> **Response to Request for Production No. 3**: Equifax objects to this Request as unduly burdensome, not relevant to any issue in this case, and not proportional to the needs of the case. Equifax further objects to this Request to the extent it seeks production of confidential, trade secret, and/or proprietary information. Equifax further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.
>
> **Supplemental Objections and Response to Request for Production No. 3**: Equifax objects to the extent this Request seeks evidence of inadmissible subsequent remedial measures. Subject to these and its previously served Objections, see EIS-OGARA-003125-003132.

(Docket No. 75-5 at ECF p. 3; Docket No. 75-19 at ECF p. 2).

Equifax's basic defense in this case is that its procedures used at the time of O'Gara's alleged mixed file were reasonable. I find that the evidence Plaintiff seeks with regards to the NYAG investigation is relevant. Again, as part of his claim, O'Gara must prove the credit report's inaccuracy was due to Equifax's failure to failure to follow reasonable procedures to assure maximum possible accuracy. *Mirocha*, 805 F. Supp. at 668. Like before, Plaintiff explains that it seeks this discovery to show Equifax was aware of widespread problems with mixing files. The fact that only a small number of mixed files occur through the CRA's matching information processes does not negate the relevancy of the evidence related to the NYAG Settlement Agreement and the March 13, 2017, Press Release. The March 13, 2017, Press Release recognized that the "enhanced public record data standards" the CRAs would be employing would result in "approximately half of [the tax lien data]" not meeting the new personal identification requirements. (Docket No. 75-10). Thus, while the NYAG investigation's overall

scope may have been broader than the evidence relevant to O'Gara's claims, there is certainly aspects of the investigation and subsequent happenings that are relevant to O'Gara's claims. The Court also notes O'Gara's willingness to accept a reduced scope to the extent there was information relevant to mixed files exchanged during the NYAG investigation, which was not relevant to Plaintiff's particular public record problem. (Docket No. 77 at ECF p. 9).

Equifax argues that even if the NYAG investigation is relevant, it is inadmissible as a subsequent remedial measure. Equifax failed to raise any subsequent remedial measure objection in its written responses. An objection to a discovery request must be raised "in a timely fashion." *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*, 667 F.2d 600, 605 (7th Cir. 1981). Failure to raise an objection to a Rule 34 request for production or a Rule 33 interrogatory in a timely manner waives the responding party's right to subsequently assert that objection. *See, e.g.*, *Buonauro v. City of Berwyn*, 08 C 6687, 2011 WL 116870 (N.D. Ill. Jan. 10, 2011) ("It is well-established that the failure to [raise objections to discovery requests] in a timely manner waives a subsequent assertion of objections in the absence of good cause"). While Rules 33 and 34 do not precisely delineate when an objection is "timely" or not, the rules clearly state that a party upon whom the discovery request has been made has thirty days to respond, and an objection to part of the request must specify the reasons for so objecting in such response. Fed. R. Civ. P. 33(b)(2); 34(b)(2). This is interpreted to mean that the time for raising an objection is in the "initial response to Plaintiff's discovery requests," and failure to do so constitutes waiver of the objection. *Buonauro*, 2011 WL 116870, at *4.

It appears Equifax first made the subsequent remedial measure argument with respect to Interrogatory No. 3 and Requests for Production Nos. 1, 2, 3 on October 4, 2017, when it served supplemental responses, three months after its first responses. (Docket No. 75-18; Docket No.

75-19). The Rules, however, do not allow a second bite at discovery objections, particularly 90 days after the responses were first answered. Thus, Equifax's subsequent remedial measure objection was waived, as to the evidence's discoverability, by not timely raising it in the initial responses to Plaintiffs' Rule 33 interrogatories and Rule 34 requests for production.

The Court notes that even if the subsequent remedial measure objection was not waived it would not have impacted the discoverability of the evidence. Whether or not the evidence in question constitutes an inadmissible subsequent remedial measure pursuant to Rule 407 of the Federal Rules of Evidence is a question for the Court to consider at the trial stage of a matter. Evidence need not be admissible to be discoverable. Here, Plaintiff has established relevancy and Equifax has not overcome its burden to properly object to the discovery of the evidence.

Turning to the specific interrogatories in this topic. Equifax's supplemental answers seem to answer Interrogatories Nos. 1 and 2 in full and O'Gara provides no argument otherwise as to how these interrogatories are not completely answered. Therefore, as to Interrogatories Nos. 1 and 2, Plaintiff's request is **DENIED. The Court GRANTS Plaintiff's request as to Interrogatories Nos. 3 and 4 and Requests for Production Nos. 1, 2, and 3. Equifax is ORDERED to supplement its response within fourteen (14) days of this entry. The Court implements O'Gara's agreement to narrow the requests to include only evidence responsive to mixed files with O'Gara's particular public record problem.**[3]

---

[3] O'Gara also argues that the relevancy of the NYAG's settlement agreement and subsequent evidence impacts the sufficiency of nearly all of Equifax's interrogatory and request for production responses challenged in O'Gara's motion. The Court does not see how this is necessarily true, but in the event that the Court has Ordered Equifax to otherwise respond to an interrogatory and Equifax was withholding evidence responsive to that interrogatory on the basis of the NYAG's settlement agreement's irrelevancy, the Court **ORDERS Equifax to supplement its response within fourteen (14) days of this entry.**

### V. Attorney Fees

Plaintiff requests that Equifax be ordered to pay Plaintiff's reasonable attorney fees and costs associated with this motion and the prior discovery (including the disqualification phase discovery).

The Federal Rules allow for an award of fees and expenses when a court rules on a motion to compel. Fed. R. Civ. P. 37(a)(5). Here, however, Plaintiff has not compelled any discovery responses with regards to the disqualification phase discovery. Moreover, the Court, has granted Plaintiff's request in part and denied in part, and the Court in such circumstances has significant discretion with regard to the award of any fees. *See* Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."). Given Defendant's willingness to meet and confer and to provide supplemental responses based upon that meet and confer and given that some of the disputed interrogatories and requests for production lacked applicability or were poorly drafted, the Court finds each party should bear its own costs with regards to this discovery dispute.

### VI. Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Against Equifax (Docket No. 74) is **GRANTED in part and DENIED in part**. **Equifax is ORDERED to supplement its responses, as detailed above, within fourteen (14) days of this Entry.**

**SO ORDERED.**

**Dated:** January 23, 2018

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Service made electronically on all ECF-registered counsel of record.